## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Great Old Broads for Wilderness, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.  ) | No. 01:05CV01433 (ESH) |
| ) | |
| P. Lynn Scarlett, et al.,[1] ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DECLARATION OF GRETA ANDERSON

I, Greta Anderson, declare as follows:

1.  The facts set forth in this declaration are based upon my personal knowledge. If called as a witness, I could and would testify to these facts. As to those matters which reflect an opinion, they reflect my personal opinion and judgment on the matter.

2.  I am an adult citizen of the United States and reside in Tucson, AZ.

3.  I am submitting this declaration on behalf of Appellant Center for Biological Diversity ("Center"), a non-profit organization of good standing in the State of Arizona.

4.  I am currently Range Restoration Program Coordinator for the Center for Biological Diversity. I volunteered for the Center for 2003-2004 and was hired by the Center in the summer of 2004. I am also a member of the Center. I joined the Center because of the organization's on-the-ground activism and success at protecting imperiled species. I also believe that the Center reflects creative problem-solving and cutting-edge ecological thinking.

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), P. Lynn Scarlett is automatically substituted as Defendant in place of Gale Norton.

1

5. The Center for Biological Diversity is a non-profit environmental organization with the mission of promoting the protection of Endangered species and wild places through science, policy, and law. The Center's staff and over 22,500 members include many residents of Utah and Arizona.

6. The Center, its staff, and its members actively participate in public land management decision-making. We consider the prevention of livestock-induced detriment to the ecological resources of our public lands to be of foremost concern. The Center has a long-standing history of disseminating information to the public about public lands' management, including on issues of livestock grazing in riparian and upland environments, such as in the Glen Canyon National Recreation Area ("Glen Canyon").

7. The Center, its staff and its members believe that agencies are directed by federal law to manage the public lands of this country to uphold the integrity of environmental and cultural resources found thereon. The Center has repeatedly raised concerns over the impacts of livestock grazing on environmental, recreational, and cultural resources during agency planning and decision-making, including with the National Park Service and the Bureau of Land Management.

8. The Center has commented, protested, and/or appealed numerous federal grazing permit renewals and range development projects in California, New Mexico, Utah and Arizona, including in the areas at issue in this matter. Most recently, the Center submitted extensive comments on the Bureau of Land Management Resource Management Plan (RMP) for the Arizona Strip, which includes areas within Glen Canyon; the Grand Canyon-Parashant National Monument; and the Vermillion Cliffs National Monument. In our comments and those of a greater coalition of which we are members, we raised concerns and comments regarding

livestock impacts on cultural and archeological resources, Endangered species, riparian habitat, upland soils, non-native species, and many other issues.

9. On June 3, 2002, we filed a protest of the Kane Ranch Allotment Management Environmental Assessment ("EA") for the very reason that the EA permitting livestock grazing on this area failed to explore the impacts to cultural resources. The EA governs grazing on the Soap Creek (Lee's Ferry) allotment challenged in this case.

10. Our concerns about trespass livestock on the San Pedro River of southern Arizona led to the riparian exclosures being constructed within the San Pedro Riparian National Conservation Area. Further, we have regarded damage to cultural sites as fundamental reasons for opposing ski area expansion on the San Francisco Peaks of northern Arizona, for opposing logging at Mt Graham in central Arizona, and for recent actions along Fossil Creek in central Arizona. These cases have all led to litigation being brought against the federal agencies who are responsible for protecting these resources.

11. The Center is listed as interested public on numerous BLM grazing allotments within the Kanab and St. George Field Office districts, and we follow very closely livestock grazing decisions made on federal land in northern Arizona and Utah, including lands managed by the BLM, the National Forest Service, and the National Park Service. In 2002, the Center closely followed the drought-necessitated removal of cattle from the Grand Staircase-Escalante National Monument. In 2001, we mobilized members to write letters protesting trespass cattle on Fifty-Mile Mountain allotment on the Grand Staircase-Escalante National Monument.

12. The Center has been very active in promoting the restoration of Glen Canyon and the decommissioning of the dam that creates it, in an effort to restore populations of native fish species downstream.

13. The Center has an informational interest in reviewing documents, conveying information to Center members, to the media and the public, and providing agencies information on the negative impacts of livestock grazing in Glen Canyon on archeological and ecological resources. Preventing damage caused by livestock grazing is a central part of the Center's Deserts Program, and participation in federal land management of livestock grazing is a primary activity of this project. The lack of a public process and environmental review necessary to authorize livestock grazing in Glen Canyon harms the Center's ability to participate in and disseminate information on livestock grazing in Glen Canyon to its members and the public.

14. The Center has a long history of using the public process to determine whether or not projects on federal lands comply with the law and educating the public and its members about federal land management. The Center's review of these documents and subsequent actions, including lawsuits, often forces agencies into compliance. Until the agencies conduct a thorough environmental analysis of the impacts of continued livestock grazing in Glen Canyon, as required by law, and take action to prevent the ongoing damage, the Center will continue to suffer ongoing and irreparable injury to its informational interest.

15. In addition, Center staff and members derive environmental, scientific, aesthetic, recreational, health, and spiritual value from the use and enjoyment of public lands, including those of the Glen Canyon NRA. Members of the Center regularly visit Glen Canyon and participate in recreational activities, including hiking and viewing archeological sites, and intend to continue to do so.

16. The Center asserts that the Secretary of the Interior has not acted responsibly or legally in managing livestock grazing within Glen Canyon, and has failed to protect the irreplaceable ecological and cultural resources, despite having sufficient information about the

deleterious impacts of livestock grazing and having acknowledged the need for improvements through a management plan.

17. The Secretary's grazing management decisions harm our organizations' and our members' environmental, scientific, aesthetic, recreational, health, and spiritual interests in Glen Canyon.

18. Adequate consideration of the impacts of livestock grazing and corrective action to reduce the impacts and/or impairment would redress our injuries. The agencies cannot simply continue to ignore the enormous amount of evidence demonstrating that livestock grazing is continuing in Glen Canyon in an inappropriate manner.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 28th day of April, 2006.

_____
Greta Anderson