UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GREAT OLD BROADS FOR WILDERNESS et al., | ) ) ) | No. 01:05CV01433 (ESH) |
| Plaintiffs, | ) ) ) | DECLARTION OF VERONICA EGAN |
| v. | ) ) | |
| GALE NORTON et al., | ) ) ) | |
| Defendants. | ) ) | |

## DECLARATION OF VERONICA EGAN

I, Veronica Egan, declare as follows:

1. The facts set forth in this declaration are based upon my personal knowledge. If called as a witness, I could and would testify to these facts. As to those matters which reflect an opinion, they reflect my personal opinion and judgment on the matter.

2. I am an adult citizen of the United States and reside in Durango, Colorado.

3. I am submitting this declaration on behalf of Plaintiff Great Old Broads for Wilderness ("Great Old Broads"), a non-profit organization of good standing in the State of Colorado. I authorize Great Old Broads to represent me and otherwise act in this proceeding on my behalf.

4. I have been concerned with the environment since childhood when, growing up in Cleveland, Ohio, I did not understand why we were not allowed to swim or fish in then-dead Lake Erie. When the Cuyahoga River burned twice in the late 60s, I knew I wanted to do something to make a difference in the way humans treat the planet. I am a member of the Sierra Club, Audubon Society, Wilderness Society, Colorado Environmental Coalition, Back Country Horsemen in New Mexico and Colorado, and a founding member of the Santa Area Defense Fund.

5. I am currently Executive Director of Great Old Broads. I am also a member of Great Old Broads. I have been a member of Great Old Broads for over 14 years, and served on the Board of Directors for 2½ years. I joined Great Old Broads because of the organization's on-the-ground activism and because they represent a unique voice of experience and wisdom in the environmental movement.

6. Great Old Broads is a non-profit environmental organization with the mission of promoting the preservation of public lands, which in turn protects the valuable cultural and ecological resources contained on those lands. Great Old Broads advocates for greater protection of public lands by raising public awareness about management and development decisions on public lands. Great Old Broads staff and membership of over 2500 individuals includes many residents of Utah and Arizona.

7. Great Old Broads, its staff and its members actively participate in public land management decision-making, raising issues such as the impact of livestock

grazing on public land ecosystems, cultural resources, water quantity and quality, wildlife, and wildlife habitat. Preventing livestock grazing from causing irreparable damage to water quality, vegetation, wildlife habitat, cultural resources and recreational opportunities is one of Great Old Broads' primary projects. Great Old Broads has played an active role in disseminating information to the public regarding public lands issues, such as livestock grazing in the Glen Canyon National Recreation Area ("Glen Canyon").

8. Great Old Broads, its staff and its members believe that public agencies must be guided by sound scientific evidence when making management decisions that will affect the integrity of the environmental and cultural resources of public lands. Great Old Broads has repeatedly raised concerns about the adverse impacts of livestock grazing on natural and cultural resources during agency planning and decision-making. To this end, pursuant to 43 C.F.R. § 4100.0-5, Great Old Broads has obtained "interested public" status on all grazing allotments in Utah at issue in this case.

9. In addition, during my tenure at the organization and under the direction of myself and the Board of Directors, Great Old Broads has commented on, protested, and/or appealed numerous federal grazing permit renewals, management plans and range development projects, including agency actions in the areas at issue in this matter. For example, Great Old Broads has pending before the Interior Board of Land Appeals (IBLA 2005-004) an appeal challenging the grazing permit

      renewals for the Cave Creek, Coop Creek, Gordon Point, and Neuts Canyon allotments, which are managed by the Kanab Field Office of the Bureau of Land Management (BLM) in southern Utah. In its appeal, Great Old Broads raises violations of the National Environmental Policy Act (NEPA), the National Historic Preservation Act (NHPA), and the Federal Land Policy and Management Act (FLPMA).

10. Great Old Broads has two appeals pending before the Interior Board of Land Appeals' Office of Hearings and Appeals raising NEPA, NHPA, and FLPMA claims relative to the Kanab Field Office's decision to renew grazing permits for several additional allotments.

11. In December 2004, Great Old Broads was successful in its challenge of grazing permit renewals issued for eight allotments by the Monticello Field Office. The Tribunal concluded that the permits issued by BLM were inconsistent with the Resource Management Plan and accordingly, set aside BLM's grazing permit renewal decision. In addition, as a result of this action, BLM decided that it would undertake a more complete effort to identify cultural recourses and impacts to cultural resources from livestock grazing on the Montezuma Canyon Allotment.

12. Great Old Broads has also appealed the approval by BLM of several range development projects associated with livestock grazing, including water

developments. At this time, the decisions to authorize the water developments have been withdrawn.

13. As interested public, Great Old Broads has also been extensively involved in livestock management in Glen Canyon. On April 19, 1999, Great Old Broads submitted comments to Glen Canyon on the "Grazing Plan for Glen Canyon National Recreation Area and Environmental Assessment" that highlighted the failure of the Secretary of the Interior to comply with her statutory and regulatory duties. Great Old Broads discussed at length the organization's concerns regarding the adverse impact on and impairment of park resources, such as riparian areas, sensitive wildlife, soils, native plant species and cultural resources.

14. On September 20, 1999, Great Old Broads submitted to Glen Canyon "Comments on the Decision Notice and Finding of No Significant Impact on the Grazing Component of the General Management Plan for Glen Canyon National Recreation Area." Great Old Broads discussed the glaringly inadequacies of the analysis associated with the final decision to adopt the Grazing Management Plan.

15. On May 29, 2001, Great Old Broads sent a letter to Glen Canyon regarding the Park Service's duties to protect drought stricken allotments within Glen Canyon, including the Lake and Rock Creek-Mudholes allotments, from impairment and the failure of permittees to comply with the law.

16. On May 24, 2002, Great Old Broads notified the Park Service that it was in violation of the law by allowing livestock grazing to significantly and

permanently impair Glen Canyon resources and provided the Park Service with evidence of this impairment. Great Old Broads followed this letter with subsequent correspondence related to impairment of Glen Canyon resources caused by livestock grazing.

17. Previously, on October 24, 2001, Great Old Broads filed a protest of BLM's Proposed Grazing Decision and Environmental Assessment for the White Canyon Allotment in Glen Canyon. Great Old Broads raised concerns about the legality of the proposed permit renewal. Great Old Broads also highlighted the agency's acknowledgment of serious livestock grazing impacts on riparian areas, cultural resources, soils, vegetation, visual qualities, and wildlife habitat. BLM never finalized its decision to authorize grazing based on the analysis of the Environmental Assessment ("EA").

18. On January 27, 1998, Great Old Broads protested the proposed decision of BLM to renew grazing permits for the Forty Mile Ridge Allotment. Great Old Broads raised the inadequacies of the agency's analysis of livestock grazing impacts on riparian areas, recreation, wilderness qualities, and water quality. Great Old Broads staff subsequently toured the allotment with BLM personnel to discuss grazing management. BLM never finalized the decision to authorize grazing based on the analysis of the EA.

19. Great Old Broads also submitted scoping comments on the Grand Staircase-Escalante National Monument Grazing Environmental Impact Statement ("EIS")

6

and has met with Monument staff repeatedly since 2000 to discuss the progress and content of this EIS.

20. Great Old Broads also filed a lawsuit in the District Court of the District of Columbia (Case No. 1:04CV01446(HHK)) challenging BLM's failure to provide, pursuant to a fee waiver, cultural resource related documents requested through the Freedom of Information Act (FOIA). Great Old Broads made this FOIA request to, *inter alia*, the Grand Staircase-Escalante National Monument, the Monticello Field Office, Kanab Field Office and the Henry Mountains Field Station. Following summary judgment briefing, the Court recognized that the records "would provide useful insight into the relative threats to cultural resources on public lands . . . [and that] such information would help the public understand and respond to such a threat." The responsive documents Great Old Broads has received as a result of the lawsuit include hundreds of documents acknowledging that livestock grazing is causing adverse impacts to cultural resources.

21. I have an informational interest in reviewing documents, conveying information to Great Old Broads members and the public, and providing agencies information on the negative impacts of livestock grazing in Glen Canyon. The lack of a public process and environmental review necessary to authorize livestock grazing in Glen Canyon harms my ability to participate in decision-making and disseminate information on livestock grazing in Glen Canyon. Until the agencies conduct thorough environmental and cultural resource analyses of the impacts of

continued livestock grazing in Glen Canyon, as required by law, and take action to prevent the ongoing damage, I will continue to suffer ongoing and irreparable injury to my informational interest.

22. In several ways, Great Old Broads disseminates to the public the information it would gather and analyze were the agencies complying with the law. For example, the organization maintains a detailed website containing this information, as well as issues of its newsletters. Great Old Broads also uses traditional media as a means of disseminating the information, as the group and the information it has to offer are often featured in local and national newspapers.

23. The need for Great Old Broads extensive advocacy relating to grazing impacts in Glen Canyon is highlighted by my personal observations while visiting public lands encompassed by allotments within Glen Canyon. I derive environmental, scientific, aesthetic, recreational, health, and spiritual value from the use and enjoyment of public lands, including the exact lands encompassed by grazing allotments in Glen Canyon at issue in this matter. I have been hiking in the canyons of Southern Utah for at least 18 years, including innumerable visits to Glen Canyon. I am planning to hike on Mancos Mesa with friends for a week in April 2006. Also, I am likely to return to Glen Canyon several other times during 2006 for shorter periods. In the next two years, I intend to return to all of the allotments I have previously visited and am likely to visit additional allotments.

24. I have personally visited the following areas encompassed by Glen Canyon: Fortymile Gulch, Hurricane Wash, Chimney Rock down to Coyote Gulch, Jacob Hamblin Arch, Crack in the Wall, Swett Creek, Fourmile Canyon, Peshliki Fork, Ticaboo Canyon, Middle Point, Long Canyon, the long rim above Halls Creek, Llewellyn Gulch, Fiftymile Gulch, Davis Gulch (and benches), Steer Gulch, Whirlwind Draw, Crystal Springs, lower Grand Gulch, Mancos Mesa (including the western part), Knowles Canyon, Moqui Canyon, North Gulch, the lower portions of White Canyon, Hite, Muley Point (including the top and areas below the rim), Slickhorn Canyon, including the uplands, John's Canyon, Slickhorn Pasture, the benches above the San Juan River west of Slickhorn Canyon, and all along Route 89.

25. Having reviewed maps of the allotments at issue in this lawsuit, along with trip notes, I have determined that I have visited the Glen Canyon portions of the following allotments: Forty Mile Ridge, Rockies, Waterpocket, Soda, Lake Canyon, White Canyon, Slickhorn Canyon, Texas Muley, Perkins Brothers, Ferry Swale, and Wahweap.

26. Although I have identified certain landmarks in each allotment that I have visited, the landmarks do not represent the only areas of the allotments that I have visited. Rather, I have traveled to, from, around and among the landmarks indicated, as well as in other portions of the allotments that are not named on maps. Indeed, I

often find myself in the upland portions of allotments, which are more heavily impacted by grazing.

27. While visiting these allotments, I have hiked, rafted, climbed, viewed wildlife and birds, taken photographs, visited and contemplated archaeological sites in all of these places, and taken scenic drives. I consider my time in Glen Canyon to be essential to my physical, mental and spiritual well-being.

28. Unfortunately, I have observed the detrimental impacts of livestock grazing on each of these allotments. These impacts, such as damage to riparian areas and water quality, degraded uplands, damage to and loss of wildlife habitat, damage to living soil crusts, soil erosion, destruction of cultural sites and others significant adverse impacts, diminish my use and enjoyment of each allotment. These impacts will continue to diminish my use and enjoyment of these allotments during future visits because livestock grazing continues to be authorized in Glen Canyon at inappropriate levels.

29. While visiting Glen Canyon, I rely exclusively on local water sources for my water needs. I have repeatedly found many springs, seeps, streams and potholes rendered unusable due to livestock trampling and excrement, and the occasional dead animal in a water source. Streams that were once water sources for human use are now devoid of water, a condition caused and/or exacerbated by livestock grazing. This is not only repugnant to me, it can mean having to shorten or cancel a trip because of the extreme scarcity of reliable water sources in Glen Canyon.

30. For example, on a trip to Moqui Canyon in 2003, I was counting on Harrison Spring for drinking water but found it totally unusable due to being fouled by cattle trampling and excrement. I would like to return to Moqui Canyon but, I will not return until this situation is rectified. Similarly, in Knowles Canyon, there is considerable livestock damage in the riparian corridor and streambed for at least four miles, from the lower sand slide all the way to the river.

31. In addition, the reduction or total removal of native plant species by livestock has reduced or eliminated my ability to study and photograph native birds, animals and wildflowers because of destroyed habitat. Moreover, the reduction or total removal of native plant species severely diminishes the aesthetic qualities of areas within Glen Canyon. Places that once supported native plant cover have been reduced to blow-sand and invasive, noxious plant species or no plant cover at all. In other places, all or most of the native grasses and shrubs that cows prefer are gone, leaving vast areas dominated by a single species of plant.

32. I am harmed by the loss of living soils and by the erosion caused by livestock grazing. In most areas, biotic crusts have been crushed and trampled by cows – I can clearly see their tracks and trails. I also see rills and pedestals, apparent signs of erosion, likely caused by livestock grazing and the loss of biotic crusts. Eroded areas are less aesthetically pleasing and are likely to remain bare or to be covered by invasive weeds.

33. Moreover, archaeologists have determined that only a limited number of the cultural resource sites in the area occur in overhangs or as high "cliff dwelling" sites. The remainder of the cultural resource sites are surface sites, which are especially vulnerable to livestock impacts due to their accessibility. This condition is readily apparent to anyone who spends time hiking in Glen Canyon. I have often observed cultural resource sites that have been trampled or scattered by cattle. I have observed cattle excrement deposited on sensitive cultural resource sites. I have also observed cultural resource sites impacted by erosion problems, which are caused by livestock grazing. In some areas, there used to be numerous surface cultural resource sites, but heavy livestock grazing has obliterated the majority of them.

34. My ability to observe, study, and contemplate these cultural sites is greatly diminished by the observable damage to the sites from livestock grazing. I find it offensive that irreplaceable cultural resources are being lost without adequate protective action by the agencies. Absent agency intervention, these conditions will continue to diminish my enjoyment of Glen Canyon during future visits.

35. The Park Service and BLM's grazing management decisions harm my environmental, scientific, aesthetic, recreational, health, and spiritual interests in Glen Canyon. These agencies continue to allow livestock grazing without adequately considering or preventing the damage that I have observed while visiting Glen Canyon.

36. Adequate consideration of the impacts of livestock grazing and corrective action to reduce the impacts and/or impairment would redress my injuries. The agencies cannot simply continue to ignore the enormous amount of evidence demonstrating that livestock grazing is continuing in Glen Canyon in an inappropriate manner.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 17 day of April 2006 in Durango, Colorado.

*Veronica Egan*
Veronica Egan