UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREAT OLD BROADS FOR WILDERNESS et al., <br><br> Plaintiffs, <br><br> v. <br><br> GALE NORTON et al., <br><br> Defendants. | No. 01:05CV01433 (ESH) <br><br> **DECLARTION OF HARVEY HALPERN** |

**DECLARATION OF HARVEY HALPERN**

I, Harvey Halpern, declare as follows:

1. The facts set forth in this declaration are based upon my personal knowledge. If called as a witness, I could and would testify to these facts. As to those matters which reflect an opinion, they reflect my personal opinion and judgment on the matter.

2. I am an adult citizen of the United States and reside in Cambridge, Massachusetts.

3. I am submitting this declaration on behalf of Appellant Great Old Broads for Wilderness ("Great Old Broads"), a non-profit organization of good standing in the State of Colorado. I authorize Great Old Broads to represent me in this proceeding and otherwise act in this proceeding on my behalf.

4. I am currently a member of Great Old Broads. I have been a member for four years.

5. I joined Great Old Broads because I am intensely interested in fighting for protection of public lands and I support the organization's approach to protecting public lands.

      Members of Great Old Broads demonstrate that elderly grandmothers and grandfathers can enjoy and advocate for the protection of public lands, including remote areas, by getting out and working on-the-ground in areas they seek to protect. The ability of elderly citizens, such as many of the members of Great Old Broads, to access isolated areas demonstrates that our public lands are accessible to all who seek to enjoy them.

6. I strongly support Great Old Broads' work to require proper analysis and management of livestock grazing in the Glen Canyon National Recreation Area ("Glen Canyon"). As discussed below, I regularly visit and intend to continue regularly to visit Glen Canyon and have observed the detrimental effects of livestock grazing, which in turn diminishes my enjoyment of Glen Canyon.

7. I have visited Glen Canyon numerous times. Over the past 32 years, I estimate that I have made 20 trips to Glen Canyon. Many of these trips were of long duration, most often for a week or more in length. Most recently, I visited Glen Canyon in April 2005. I plan to return to Glen Canyon, including the areas encompassed by allotments identified below, in April 2006 and 2007. Also, I plan to visit Glen Canyon again and again throughout the rest of my life, including the areas encompassed by grazing allotments at issue in this case.

8. I derive environmental, scientific, aesthetic, recreational, educational, health, and spiritual value from the use and enjoyment of Glen Canyon, including lands encompassed by grazing allotments in Glen Canyon. While visiting Glen Canyon, I use and enjoy the public land for scenic driving, backpacking, hiking, photography, birdwatching, plant and wildlife viewing, identifying geological formations, archeological exploration, and rock

climbing. I thoroughly enjoy the magnificent vistas and aesthetic qualities of Glen Canyon. In particular, I travel to these public lands to enjoy remote, undeveloped natural places where the quiet allows me to experience the sounds of nature, the beauty of the landscapes, and the exhilaration of observing functioning ecosystems and the associated wildlife.

9. While visiting Glen Canyon, I meticulously keep track of my location because of the extreme danger of getting lost in this isolated terrain. Prior to the late 1990's, I used a compass and topographical maps to record my location. As of the late 1990's, I utilize a Global Positioning System (GPS) along with compass and maps to accurately record my location. In addition, I have reviewed topographical maps depicting the grazing allotments at issue in this lawsuit to determine the portions of the allotments within Glen Canyon that I have visited.

10. I have pursued my environmental, scientific, aesthetic, recreational, health, and spiritual interests in the following areas of Glen Canyon, which are encompassed by livestock grazing allotments: the lower end of Dark Canyon, Gypsum Canyon, Imperial Valley, Spencer Point, Navajo Point, Moqui Canyon, North Gulch, Cedar Canyon, Crystal Creek Canyon, Knowles Canyon, Forgotten Canyon, Navajo Canyon (south of Nokai Dome), Paria Canyon (coming out at Lee's Ferry), areas west and north of Warm Creek Bay, access routes to trailheads for Rock Creek/Kaiparowits Plateau hiking routes, Johns Canyon, Slickhorn Canyon (including the lower portion), Lower Rock Creek Canyon, Middle Rock Creek, along the Dirty Devil River, slots off Andy Miller Flats, along the San Juan River, Davis Gulch, Llewellyn Gulch, Cottonwood Gulch, Navajo Valley, Fifty

       Mile Gulch, White Canyon, Hite, areas immediately east of Glen Canyon City (Big Water), Wiregrass Canyon, access routes to Wahweap Creek, Last Chance Creek, Stevens Canyon, Forty Mile Canyon, Sooner Wash, Lower Trachyte, Swett Canyon, Lower South Fork Canyon, Ticaboo Canyon, Peshliki Canyons, along Seven Mile Creek, and all along Route 89.

11. Although I have identified many landmarks within the allotments that I have visited and enjoyed during my backpacking and camping trips, these places are not the only areas I have visited and enjoyed that lie within the Glen Canyon allotments. Actually, I spend a majority of the time I am in Glen Canyon getting to and leaving these landmarks. This means that I spend a great deal of time on the benches and rims of these canyons, or traversing across vast upland areas to access these springs, canyons, and viewpoints.

12. Based on my review of maps depicting the allotments at issue in this lawsuit and the boundaries of Glen Canyon, I have visited the following allotments: Bunting Well, Ferry Swale, Forty Mile Ridge, Indian Creek, Lake, Lake Canyon, Lee's Ferry (Soap Creek), Perkins Brothers, Rock Creek-Mudholes, Rockies, Sewing Machine, Slickhorn, Soda, Upper Cattle, Upper Warm Creek, White Canyon, and Wiregrass.

13. My enjoyment of Glen Canyon, including the areas encompassed by the allotments identified above, is severely diminished by livestock grazing. I have observed livestock grazing that has damaged riparian areas, impaired water quality, degraded uplands, harmed native plant communities and wildlife habitat, eroded soils, destroyed cultural sites, marred scenic vistas, crushed living soils and resulted in other adverse impacts.

14. For example, cattle feces are present all over the areas I visit in Glen Canyon, including

the allotments identified above. Often the stench is nearly unbearable. This lessens my ability to enjoy my hiking, backpacking, photography, birdwatching, rock climbing, and sightseeing experiences. In general, the aesthetic appeal of the areas is drastically reduced by the presence and stench of feces.

15. Moreover, on one of my recent visits to the Kaiporowitz Plateau area, I encountered a cave with 20 to 30 dead cows inside. This grotesque site is the exact opposite condition I hope to encounter while seeking out natural places.

16. In addition, while visiting Glen Canyon, I immensely enjoy exploring archaeological sites. I have discovered ruins, kivas, ladders into kivas, large pieces of pottery, pieces of baskets, arrowheads, axes, including one with a hafting, pictographs, and petroglyphs. In fact, I discovered a rock awl very close to the cave where I found the dead cows described above.

17. However, the integrity of many of these cultural sites and resources is severely degraded by cow feces and trampling. I have observed ruins nearly covered with feces and many rock walls that have been knocked down by cattle rubbing against them. These conditions, caused by mismanagement of livestock grazing, adversely affect my ability to enjoy archaeological exploration while visiting Glen Canyon.

18. During my visits to Glen Canyon, including the areas encompassed by the allotments identified above, I have observed disgusting water quality conditions, in particular in Moqui Canyon, North Gulch, and Navajo Canyon. It is clear that the water quality has been heavily impacted by livestock use.

19. In fact, while visiting Glen Canyon, including the areas encompassed by the allotments

identified above, I almost exclusively rely on natural water sources for drinking water. However, I have gotten sick from drinking the water. For example, during a trip to Moqui Canyon, our party had to drink water that had been severely polluted by cattle in the area. We boiled, filtered, and added iodine to the water. Yet, it was still barely palpable. Several members of our party could not force the water down and became increasingly dehydrated. This dangerous situation, brought on by livestock-polluted water, greatly diminished my enjoyment of this camping trip. In fact, this polluted water condition coupled with the fact that the cattle were being illegally grazed at this time of the year prompted me to write a letter of complaint to BLM. According to BLM, the relevant permittee received a substantial fine from the agency.

20. In addition, while hiking and scenic driving in Glen Canyon, including the areas encompassed by the allotments identified above, I enjoy viewing native plant communities and intact soils. However, I have noticed a stark contrast in the presence of native species from grazed to ungrazed areas. Areas that are subject to livestock grazing often are primarily populated by non-native invasive species, such as Russian thistle, rather than a variety of native plant species. In many other places that are grazed by livestock, all the grass and shrub species cows find most palatable are gone, leaving vast landscapes dominated by a single native species such as black brush. I also see large areas where cattle have trampled biotic crusts into dust and grazed areas where erosion is so severe that small islands or mounds of sand covered with vegetation are left high above the level of the ground – the soils between these islands have been eroded away leaving these plant "islands" high and dry.

21. It is my observation that poor livestock management practices have contributed significantly to the degradation of soils and vegetation. The prevalence of non-native plant species or monocultures of native species increases in the risk of harmful wildfires and/or decreases habitat for various species of wildlife. Soil erosion and loss of living crusts adversely impact native plant communities and makes it harder or impossible for native plants to thrive and spread or to reestablish themselves in disturbed areas. Because I enjoy viewing and identifying native plant species, as well as viewing associated wildlife, the adverse impact of livestock grazing on vegetation and wildlife habitat greatly diminishes my experience in Glen Canyon, including the areas encompassed by the allotments identified above. If livestock grazing were curtailed to an appropriate level, I would be able to observe many more native and endemic plant species as well as wildlife species.

22. Having observed the adverse affects of livestock grazing on public lands for more than two decades, I purposefully seek out undamaged places with no livestock when enjoying the public lands of Glen Canyon, including the challenged allotments. If livestock grazing did not occur, or occurred at a suitable level on these allotments, I would visit these areas of the allotments more often.

23. Unless the Secretary of the Interior implements management changes necessary to halt the degradation I have observed from livestock grazing in these areas, I am sure that during my future visits I will find that conditions have not improved or have deteriorated, further harming my enjoyment of and personal interests in Glen Canyon.

24. This lawsuit provides a mechanism to protect my interests in Glen Canyon. If the

agencies allow or continue to allow grazing in the future, the areas that I visit and enjoy and the value of my experiences will continue to be degraded. I will continue to encounter cattle feces, polluted water, marred landscapes, eroded soils, damaged cultural sites, exotic plant species, adversely impacted native plant communities, reduce wildlife numbers, and overall degraded natural and cultural resources. On the other hand, if grazing occurs at the appropriate level, I will be more able to hike, backpack, photograph, birdwatch, rock climb, and enjoy the aesthetic value of Glen Canyon.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 14 day of April 2006 in Salt Lake City, Utah.

Harvey Halpern