**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|   |   |
|---|---|
| GREAT OLD BROADS FOR WILDERNESS and CENTER FOR BIOLOGICAL DIVERSITY,<br><br>  Plaintiffs,<br><br>  v.<br><br>DIRK KEMPTHORNE, in his official capacity as Secretary of the Interior; NATIONAL PARK SERVICE; and BUREAU OF LAND MANAGEMENT<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:05cv01433 (ESH)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO SUPPLEMENT**
**THE ADMINISTRATIVE RECORD**

**I.   INTRODUCTION**

Plaintiffs argue that Federal Defendants' motion for leave to supplement the administrative record should be denied because the supplemental documents improperly expand the scope of the record, are untimely, and contain evidence that is irrelevant to the merits of the case.  None of these arguments have merit.  First, the Federal Reply brief relies on the supplemental documents only to address the Plaintiffs' arguments that Defendants have "unreasonably delayed" under section 706(1) of the Administrative Procedure Act ("APA").  5 U.S.C. §§ 551 et seq.  By contrast, Defendants do not rely on the supplemental documents in addressing Plaintiffs' claims that the challenged permit

-1-

renewal actions or 1999 Grazing Plan were arbitrary and capricious, see 5 U.S.C. § 706(2)(A). Therefore, Defendants have not improperly expanded the scope of the administrative record for those actions. Second, Federal Defendants filed the motion for leave to supplement the administrative record in response to misleading negative inferences that Plaintiffs drew from the administrative record for the first time in their Reply brief on June 30, 2006. The motion for leave, which was filed concurrently with the Federal Defendants' Reply brief on July 21, 2006, was therefore timely. Finally, the supplemental record materials are directly relevant to the Plaintiffs' arguments that the Secretary has unreasonably delayed or unlawfully withheld action that he is required by law to take, see 5 U.S.C. § 706(1), because those materials demonstrate that the Plaintiffs have drawn misleading negative inferences in support of their section 706(1) claims from the necessarily narrow scope of the administrative record for the challenged permit renewal actions and the 1999 Grazing Plan. The Secretary's motion for leave to supplement the administrative record should therefore be granted. Moreover, Plaintiffs' request for discovery should be denied. Rather, if Plaintiffs wish to raise claims pursuant to APA Section 706(1), they should be required to file an amended complaint formally alleging those claims, after which the agencies can lodge a complete administrative record to serve as the basis for the Court's review of those claims.

## II.   BACKGROUND

In their Complaint, the Plaintiffs invoked APA Section 706(2)(A) as the basis for their claims that the Secretary's renewal of 42 grazing permits within the Glen Canyon National Recreation Area ("Glen Canyon NRA") without first meeting the procedural requirements of the Organic Act, NHPA, and NEPA was arbitrary and capricious, an abuse of discretion, and not in accordance with law. See Complaint ¶¶ 105, 107, 110, 117 (Counts I, II, III). Plaintiffs also invoked APA Section

706(2)(A) as the basis for their challenge to the Secretary's environmental assessment ("EA") and finding of no significant impact ("FONSI") for the Glen Canyon NRA Grazing Management Plan ("1999 Grazing Plan"). See ¶ 121 (Count IV). On January 9, 2006, Federal Defendants lodged the administrative record for those claims. On April 28, 2006 the Plaintiffs filed their motion for summary judgment, and Defendants responded by filing a cross-motion for summary judgment on June 9, 2006. In support of their cross-motion, Defendants argued that a number of appropriations riders issued by Congress for fiscal years 2000 through 2008 acted as an unqualified defense to the Plaintiffs' three claims challenging the 42 permit renewal actions. See Fed. Br. at 22-23.[1/]

Throughout the course of the briefing, however, it became evident that Plaintiffs also wished to challenge agency actions that they believe the Secretary has "unreasonably delayed or unlawfully withheld" pursuant to APA Section 706(1). Because these claims did not appear in the Complaint, and therefore were not evident when the Defendants lodged their administrative record on January 9, 2006, it became necessary for Defendants to file the instant motion for leave to supplement the judicial record so that the Defendants could respond to the Plaintiffs' new arguments. On August 1, 2006, Plaintiffs filed their opposition to this motion.

---

[1/]   The parties' underlying briefs are referenced herein as follows: Plaintiffs' Motion for Summery Judgment and Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment, Docket No. 25 (hereinafter GOB Br. at ___); Federal Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment, Docket No. 28 (hereinafter Fed. Br. at ____); Plaintiffs' Opposition to Federal Defendants' Cross-Motion for Summary Judgment and Reply to Motion for Summary Judgment, Docket No. 30 (hereinafter GOB Reply at ____); Reply in Support of Federal Defendants' Cross-Motion for Summary Judgment, Docket No. 32 (hereinafter Fed. Reply at ___); Motion for Leave to Supplement the Administrative Record, Docket No. 31 (hereinafter AR Fed. Br. at ___); Plaintiffs' Opposition to Federal Defendants' Motion for Leave to Supplement the Administrative Record, Docket No. 34 (hereinafter AR GOB Opp. at ___).

**III.    ARGUMENT**

    **A.    The motion for leave to supplement the record to address Plaintiffs' claims that the Secretary unreasonably delayed or unlawfully withheld actions that he was required to take under APA Section 706(1) does not improperly expand the scope of the administrative record that was compiled in response to the Plaintiffs APA Section 706(2)(A) claims**

The Plaintiffs' claims in this case are governed by the "arbitrary and capricious" standard of judicial review set out in the Administrative Procedure Act ("APA"). Under that standard, judicial review is limited to "the full administrative record before the [decision-maker] at the time he made his decision." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971); see also 5 U.S.C. § 706 (stating that a reviewing court "shall review the whole record or those parts of it cited by a party . . . ."). Under the APA, therefore, the court does not take evidence or make findings of fact. Cronin v. U.S. Dept. of Agriculture, 919 F.2d 439, 443 (7th Cir. 1990). Rather, "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706(2), to the agency decision based on the record the agency presents to the reviewing court." Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985); see also Fund for Animals v. Babbitt, 903 F.Supp 96, 105 (D.D.C. 1995); Environmental Defense Fund, Inc. v. Costle, 657 F.2d 275, 284 (D.C. Cir. 1981). This "record" must contain "all documents and materials that the agency 'directly or indirectly considered'" in the course of its decisionmaking process. See Fund for Animals v. Williams, 245 F.Supp2d 49, 55 (D.D.C. 2003) (quoting Bar MK Ranches v. Yuetter, 994 F.2d 735, 739 (10th Cir. 1993)).

The requirement that judicial review be based "on the whole record" applies regardless of whether a plaintiff brings his claim pursuant to section 706(1) or section 706(2) of the APA. 5 U.S.C. § 706; Biodiversity Legal Foundation v. Norton, 180 F. Supp.2d 7, 10 (D.D.C. 2001). These

record review limitations, therefore, apply when a plaintiff alleges that an agency unlawfully withheld or unreasonably delayed agency action.  See 5 U.S.C. § 706(1).  Unlike the record for challenges to agency action brought under section 706(2) of the APA, however, the administrative record for claims under section 706(1) cannot be limited to those documents or materials that were considered by the agency decisionmaker in connection with a challenged agency action, because claims under section 706(1) by definition concern actions that an agency has not yet taken.  The Ninth Circuit aptly explained this distinction between the administrative record in cases raised pursuant to sections 706(1) and 706(2) in Friends of the Clearwater v. Dombeck, 222 F.3d 552 (9th Cir. 2000).  There, the court held that the administrative record for a "failure to act" claim is not limited to the record in existence at the time of an agency's decision:

> [Plaintiffs'] argument reflects confusion between lawsuits that challenge the propriety of a final agency action, and suits that are brought to compel an agency to act in the first instance.  When a plaintiff challenges a final agency action, judicial review normally is limited to the administrative record in existence at the time of the agency's decision.  See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971), overruled on other grounds by Califano v. Sanders, 430 U.S. 99 (1977).  In these cases, the agency must justify its final action by reference to the reasons it considered at the time it acted.  See Camp v. Pitts, 411 U.S. 138, 142-43 (1973).  An action to compel an agency to prepare an SEIS, however, is not a challenge to a final agency decision, but rather an action arising under 5 U.S.C. § 706(1), to "compel agency action unlawfully withheld or unreasonably delayed."  Oregon Natural Res. Council Action v. United States Forest Service, 59 F.Supp.2d 1085, 1095 (W.D.Wash.1999).  In such cases, review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record.  See Independence Mining Co., Inc. v. Babbitt, 105 F.3d 502, 511 (9th Cir.1997).

Friends of the Clearwater v. Dombeck, 222 F.3d at 560.

In the present case, Plaintiffs assert that the administrative record is defined as of the time the agency made the decision to renew the challenged grazing permits within the Glen Canyon NRA. AR GOB Opp. at 7. This is certainly true with respect to the record insofar as it addresses the Plaintiffs' challenges to the renewal of those permits under APA Section 706(2)(A). The Plaintiffs, however, also assert that the Secretary has failed to take actions within the meaning of APA Section 706(1). Specifically, Plaintiffs first argue that the Secretary has unreasonably delayed or unlawfully withheld certain actions that they believe are required by the Organic Act's "conservation" and "non-impairment" mandates. See GOB Br. at 17 (arguing that the Secretary has violated that the Organic Act because "[t]he Secretary has taken no action to fix the adverse effects and impairment caused by livestock grazing") (emphasis added); GOB Reply at 8 (arguing that the Park Service "cannot sit by and take no action at all in the face of impairment"). Second, Plaintiffs argue that the Secretary has unreasonably delayed in completing the procedural requirements of the Organic Act, NHPA, and NEPA – procedural requirements which the appropriations riders authorized the Secretary to defer until after the permits had been renewed. See e.g.., GOB Br. at 28 ("For all permits BLM renewed in FY 2000-2003, Congress did not specify how much additional time it was giving BLM to comply with NEPA. . . . In this case, there is no question BLM's continued delay is unreasonable.") (emphasis added). Where, as here, a plaintiff asserts that an agency has unreasonably delayed or unlawfully withheld an action that it is required to take within the meaning of section 706(1), the administrative record on which those claims must be reviewed cannot be demarcated by an agency action because of the simple fact that no discrete and final agency action is alleged.

Federal Defendants' motion for leave to supplement the administrative record is therefore consistent with the requirement that judicial review under the APA be limited to the administrative

record.  Plaintiffs' argument, that the administrative record must contain only pre-decisional documents, ignores the distinction between the scope of the record in section 706(2)(A) actions and the scope of the record in section 706(1) actions, and therefore fails.  Moreover, because the supplemental record documents are not referenced with respect to the Plaintiffs' claims that the 42 permit renewal actions and the 1999 Grazing Plan EA were arbitrary and capricious, those documents do not improperly expand the scope of the administrative record on which this Court must base its review of the Plaintiffs' section 706(2)(A) claims.

      **B.**    **The motion for leave to supplement the record is timely because the supplemental record documents are offered to rebut the misleading negative inferences that Plaintiffs draw – for the first time in their Reply brief – from the narrow scope of the record that was compiled for the 42 permit renewal actions**

As explained in the Defendants' motion for leave, the Plaintiffs' Complaint raised claims challenging the Secretary's "authorization" of grazing within the Glen Canyon NRA under APA Section 706(2)(A).  The Complaint also challenged the EA and FONSI for the 1999 Grazing Plan under APA Section 706(2)(A).  Accordingly, Federal Defendants compiled an administrative record containing the documents and materials considered directly or indirectly by the Secretary in connection with the Grazing Plan EA and each of the 42 permit renewal actions that were active and justiciable at the time the Complaint was filed.  AR Fed. Br. at 2.  Throughout the course of the briefing of the parties' cross-motions for summary judgment, however, it became apparent that the Plaintiffs were also attempting to challenge agency actions "unlawfully withheld or unreasonably delayed" pursuant to APA Section 706(1).  Defendants therefore move to supplement the judicial record with administrative documents that are responsive to the Plaintiffs' new section 706(1) claims.

Plaintiffs disagree that their section 706(1) claims are "new," and argue that the Defendants should have assembled an administrative record for these claims prior to the completion of briefing. The lack of a complete record for these claims, however, is directly attributable to the Plaintiffs' failure to raise the claims in their Complaint. Indeed, Plaintiffs cannot fault the Defendants in this regard given the ever shifting manner in which the Plaintiffs have characterized their case. For example, in their Complaint, the Plaintiffs alleged that the Secretary's authorization of grazing on 24 allotments within the Glen Canyon NRA without first meeting the requirements of the Organic Act, NHPA, and NEPA was arbitrary and capricious, an abuse of discretion, and not in accordance with law pursuant to APA Section 706(2)(A). See Complaint ¶¶ 105, 107, 110, 117 (Counts I, II, III). Plaintiffs also alleged that the Secretary's EA and FONSI for the 1999 Grazing Plan were arbitrary and capricious, an abuse of discretion, and not in accordance with law. See ¶ 121 (Count IV). Accordingly, the Complaint indicates that each of the Plaintiffs' four claims was brought pursuant to APA Section 706(2)(A). In their motion for summary judgment, however, Plaintiffs argued that the Secretary has failed to fulfill his duties under the Organic Act because he allegedly has "taken no action to fix adverse impacts and impairment caused by livestock grazing." GOB Br. at 17. Plaintiffs also argued that the Secretary has unreasonably delayed in complying with NEPA for each of the permits that were renewed under the appropriations riders. See GOB Br. at 28 ("[I]t is up to the courts to determine when the delay becomes unreasonable under the Administrative Procedure Act.") (emphasis added).

In light of these arguments, Federal Defendants' cross-motion for summary judgment characterized Plaintiffs' claims as invoking both section 706(2)(A) and 706(1) of the APA. See Fed Br. at 14. In their Reply, however, Plaintiffs expressly disavowed any reliance on section 706(1), and accused Federal Defendants of mischaracterizing their claims. See GOB Reply at 10-11 ("This

case presents a challenge to completed agency actions under § 706(2)(A), not a challenge to a failure to act as the Secretary argues.").

Plaintiffs then shifted direction once again by arguing in that same brief that the Secretary has violated the Organic Act <u>by failing to take actions</u> to prevent or remedy the alleged impairment of Glen Canyon NRA resources. <u>See</u> GOB Reply at 8 (arguing that the Park Service "cannot sit by and take no action at all in the face of impairment"). Plaintiffs also argued that, while the appropriations riders allow the Secretary more time to comply with relevant environmental statutes, the Secretary's alleged "failure to make any progress" in fully processing those permits over the last six years constitutes unreasonable delay. <u>See</u> GOB Reply at 20 n.3. The briefing therefore indicates that the Plaintiffs were unable to consistently characterize their own claims as challenging either arbitrary and capricious actions under section 706(2)(A) or agency actions unlawfully withheld or unreasonably delayed under section 706(1). Plaintiffs cannot now fault the Defendants for failing at the outset to divine the true scope of their intended claims.

More relevant here, however, is that the two categories of supplemental record documents are offered to rebut the misleading negative inferences that Plaintiffs drew from the administrative record for the first time in their Reply brief on the merits. The Secretary compiled an administrative record for the 42 permit renewal actions and the 1999 Grazing Plan EA at issue in this case and lodged it with the Court on January 9, 2006 (Docket No. 15). That administrative record was necessarily limited to those documents and materials that were directly or indirectly considered with respect to the 1999 Grazing Plan EA and each of the 42 challenged permit renewal actions. <u>See</u> <u>Walter O. Boswell Memorial Hosp. v. Heckler</u>, 749 F.2d 788, 792 (D.C. Cir. 1984) (explaining that it would be improper to include a document in the administrative record that was not before the Secretary at the time he made his decision); <u>Ammex, Inc. v. United States</u>, 62 F. Supp.2d 1148, 1156

(CIT 1999) ("In compiling an administrative record, relevant materials that were neither directly *nor* indirectly considered by agency decisionmakers should not be included.") (emphasis in original). In their Reply brief, however, the Plaintiffs pointed out that the administrative record was devoid of evidence that the Secretary had taken any actions in furtherance of the Organic Act's conservation and non-impairment mandates. See GOB Reply at 8 ("The Secretary claims he chose to address impairment by adjusting grazing management on an annual basis . . . [but] can only point to four of twenty-four allotments where BLM has taken any action whatsoever to modify grazing."); id. at 10 ("The fact that the Secretary could only point to these very limited efforts to protect resources within all of Glen Canyon only serves to emphasize his complete failure to deal with the problems."). The Plaintiffs also pointed out that the administrative record for the permit renewal actions was devoid of evidence that the Secretary had completed his procedural duties under the Organic Act, NHPA, or NEPA with respect to any of the permits that had been renewed pursuant to the Congressional appropriations riders. GOB Reply at 17. The supplemental administrative record documents are therefore necessary to demonstrate that these references to the administrative record in the Plaintiffs' Reply brief are misleading and ignore the limited scope of that record.

### 1.    Supplemental record documents at BLM Nos. 368-382, 385

Contrary to Plaintiffs' assertions, the first category of supplemental record documents (BLM Nos. 368-382, 385) is not offered "to refute [Plaintiffs'] claim that the Secretary has authorized grazing without preventing impairment or adverse impacts." See AR GOB Opp. at 4. As explained above, the Secretary has compiled and lodged a complete administrative record for each of the 42 permit renewal actions at issue in this case, see BLM Nos. 1-341, and Defendants agree that the Court's review of any claim challenging the Secretary's "authorization" of grazing under APA Section 706(2)(A) must be limited to that record. Defendants, therefore, do not rely on these

supplemental documents with respect to the Secretary's "authorization" of grazing, but instead reference those documents with respect to the Plaintiffs' section 706(1) claim that the Secretary has failed to take actions in furtherance of his duties under the Organic Act.

In their Reply brief, Plaintiffs argued that the administrative record simply does not contain enough evidence of protective management actions for this Court to accept that NPS is complying with the Organic Act's conservation and non-impairment mandates. See GOB Reply at 8, 10, 14. While the position of the United States is that it is not necessary to address the merits of this claim because it is improperly programmatic and should be dismissed, it is nonetheless important that the Court understand that the administrative record is limited to the discrete and final agency actions challenged in this case under APA Section 706(2)(A). Accordingly, the administrative record does not contain evidence of the many formal and informal management actions that the agencies routinely take to conserve Glen Canyon NRA resources in furtherance of the Secretary's Organic Act duties. Federal Defendants therefore move for leave to supplement the administrative record with the documents at BLM Nos. 368-382 & 385 to illustrate that the Plaintiffs are drawing an invalid negative inference and are thus improperly exploiting the fact that the administrative record as lodged on January 9, 2006 was limited to the Plaintiffs' APA Section 706(2)(A) claims.

### 2. Supplemental record documents at BLM Nos. 342-367, 383-384

The second category of supplemental record documents (BLM Nos. 342-367, 383-384) is presented to rebut the Plaintiffs' argument that the Secretary has failed to complete his environmental analysis for any of the permit renewal actions that were originally issued pursuant to the Congressional appropriations riders – i.e., permits that were renewed without first completing procedural requirements of the Organic Act, NHPA, or NEPA. In their Cross-Motion for Summary Judgment, Federal Defendants explained that the Secretary had changed his emphasis from

processing rider permits based on administrative expiration dates to addressing those that involved high priority allotments. Fed. Br. at 6, 25. Plaintiffs responded in their Reply brief that "[t]his argument might be more persuasive if BLM could point to any permits that it has processed within high priority areas." GOB Reply at 17 (emphasis in original). In so arguing, Plaintiffs once again seek to capitalize on the narrow scope of the administrative record compiled in response to the Plaintiffs APA Section 706(2)(A) claims. That is, Plaintiffs imply that the Secretary must be unreasonably delaying in completing Organic Act, NHPA and NEPA analysis on the rider permits because no evidence of progress appears in the record. Federal Defendants therefore move for leave to supplement the administrative record with the documents at BLM Nos. 342-367 and 383-384 for the narrow purpose of rebutting this argument. The documents at BLM Nos. 342-367 and 383-384 illustrate that a lack of evidence in the administrative record for the 42 permit renewal actions and the 1999 Grazing Plan should not be interpreted as support for the Plaintiffs' claim that BLM has unreasonably delayed in completing Organic Act, NHPA and NEPA analysis for the rider permits.

In this context, Plaintiffs urge that the documents at BLM Nos. 342-367 are irrelevant to the merits of its 706(1) claim simply because they address many allotments that are not within the scope of this lawsuit.[2] See AR GOB Opp. at 9. Plaintiffs are wrong. The Plaintiffs have placed the BLM's competing obligations directly at issue by raising their APA Section 706(1) claim and by requesting that the Court impose an enforceable schedule for the completion of environmental analysis for rider permits within the Glen Canyon NRA. The D.C. Circuit has outlined a number

---

[2] While Plaintiffs dispute the relevance of BLM Nos. 342-367 because they address allotments that are not within the scope of this lawsuit, Plaintiffs cannot also challenge BLM Nos. 383-384 on these grounds because those documents concern the Grand Staircase-Escalante National Monument Office's preparation of an EIS, which addresses ten of the allotments at issue in this case. See Fed. Reply at 10.

of factors that are generally relevant in determining whether an agency's delay is so unreasonable as to warrant mandamus. See Telecommunications Research and Action Center v. Federal Communications Commission ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984). One of the factors described in TRAC is "'the effect of expediting delayed action on agency activities of a competing or higher priority.'" The Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (citing TRAC, 750 F.2d at 80). Thus, for example, in In re Barr Laboratories, Inc., 930 F.2d 72 (D.C. Cir. 1991), the court refused to grant relief to the plaintiff where "a judicial order putting [the plaintiff] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain." Id. at 75. The supplemental record documents are relevant to this analysis in the present case because they demonstrate that an order imposing a schedule for environmental analysis within the Glen Canyon NRA would upset the manner in which the Secretary has chosen to allocate the agencies' resources. Moreover, as the Barr court noted, it should not be presumed that agency officials not working on the matters raised by the plaintiffs "have just been 'twiddl[ing] their thumbs,'" id. (alteration in original) (quoting Board of Trade v. SEC, 883 F.2d 525, 531 (7th Cir. 1989)), yet that is exactly the inference that Plaintiffs have drawn from the limited scope of the administrative record, because they argue that the record contains no evidence of the Secretary's progress towards the goal of completing environmental analysis on all rider permits by the end of FY 2009. See GOB Reply at 16-17. The supplemental record documents are both relevant and necessary to rebut this misleading argument.

    **C.**     **Discovery is not merited**

With respect to BLM Nos. 342-367, Plaintiffs request that if the Court grants the Defendants' motion it should also allow the Plaintiffs to conduct discovery to determine whether the supplemental administrative record documents are truly representative of the Secretary's progress

in completing the required environmental analysis for rider permits. AR GOB Opp. at 8. Plaintiffs also seek discovery to determine the manner in which BLM has determined priorities for its environmental analysis of the grazing permits within Utah and Arizona. Id. at 10. The Plaintiffs, however, are not entitled to discovery because the requirement that judicial review be limited to the administrative record applies regardless of whether a plaintiff brings his claim pursuant to section 706(1) or section 706(2) of the APA. See 5 U.S.C. § 706; see also Sierra Club v. U.S. Dep't of Energy, 26 F. Supp.2d 1268, 1271 (D.Colo. 1998) (rejecting plaintiff's argument that the plaintiff was entitled to discovery because the lawsuit challenged an agency's alleged failure to act).

Rather than grant the Plaintiffs' request for discovery, the Court should order Plaintiffs to file an amended complaint formally alleging their APA Section 706(1) claims, or in the alternative, to abandon those claims. Assuming the Plaintiffs amend their complaint, Defendants propose that the Court then issue a scheduling order directing the Secretary to lodge a complete administrative record for those claims and ordering the parties to submit supplemental briefing limited to those claims and on the basis of that record. The Plaintiffs have also indicated support for this alternative. See AR GOB Opp. at 10 (proposing that the Secretary be required to lodge a complete administrative record for the Plaintiffs' 706(1) claim in lieu of allowing the Plaintiffs to conduct discovery).

Defendants respectfully submit, however, that the Court may decide both of the Plaintiffs' intended section 706(1) claims on jurisdictional grounds, and without need for either discovery or an administrative record. As explained in the Defendants' briefing on the merits, the claim that the Secretary has unreasonably delayed or unlawfully withheld actions in furtherance of the Organic Act's conservation and non-impairment duties is improperly programmatic and should be dismissed outright. See Fed. Reply at 13-15. Moreover, APA Section 701(a)(2) bars judicial review of the

claim that the Secretary has unreasonably delayed in completing environmental analysis on the rider permits because the timing of that environmental review has been reserved to the Secretary's sole discretion by Congress. See Fed. Reply at 6-8. A decision on these two jurisdictional arguments may dispose of both intended claims, thereby conserving judicial resources and allowing the parties to avoid the time and expense involved in compiling an administrative record or completing discovery.

## IV. CONCLUSION

For the foregoing reasons, Federal Defendants respectfully request that the Court grant their motion for leave to supplement the administrative record, and deny the Plaintiffs' request to conduct discovery.

August 10, 2006

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

Of Counsel:
G. Kevin Jones
Intermountain Office of the Solicitor
U.S. Department of the Interior

/s/ Guillermo A. Montero
GUILLERMO A. MONTERO
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
(ph)(202) 305-0443/(fax)(202) 305-0274